IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROSEMARY TEJEDA,**

      **Plaintiff,**

vs.                                                                                                           **Civil No. 03-390 RLP**

**JO ANNE B. BARNHART, Commissioner**
**of Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Plaintiff's Motion to Reverse Administrative Agency Decision, or in the alternative to Remand for additional proceedings. (Docket No. 9)

### I.    Procedural Background

Plaintiff filed an application for Supplemental Security Income on June 25, 2001, alleging a back injury due to an automobile accident that caused disabling pain. (Tr.79, 92). Her application was initially denied on November 5, 2001, and again on reconsideration on November 20, 2001. A hearing before an Administrative Law Judge ("ALJ") was held on August 27, 2002. In a decision dated November 22, 2002, the ALJ found that Plaintiff was not disabled and therefore ineligible for benefits. Plaintiff requested review of this decision which was denied on February 6, 2003 by the Appeals Council of the Social Security Administration. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

### II.    Factual Background

Plaintiff was born on October 2, 1956. (Tr.31). She completed the 11th grade (Tr. 32), and has no relevant past work experience. (Tr. 33).

On March 12, 2001, Plaintiff was a restrained passenger in a roll over accident. She treated

at a hospital emergency room, complaining of right shoulder, right knee and low back pain. X-rays did not disclose any acute injury. She was treated with pain medication (Toradol and Norflex), and discharged. (Tr. 113-123). Beginning two days later and continuing through May she received chiropractic treatment from Dennis Knoche, D.C. Dr. Knoche noted continued improvement on most visits. (Tr. 129-135).

She was also seen by Gabrielle Stiller, M.D. On April 2, Dr. Stiller documented tenderness from Plaintiff's thoracic spine to her coccyx. She diagnosed severe back strain and prescribed Oxycontin IR, Vioxx and Flexeril. (Tr. 150). Plaintiff returned to Dr. Stiller on April 9, reporting that she had obtained two of the drugs prescribed, Oxycontin and Flexeril, but was unable to afford Vioxx. (Tr. 151). Physical examination disclosed pain across her lower thoracic spine, especially on the left side and the left flank, tenderness over the coccyx, good flexion of the spine (able to bend to her ankles) and full rotation. Id. Dr. Stiller diagnosed back pain, scheduled an MRI of the lumbar spine and referred her to Dr. Nickolson for evaluation of hematuria present since the auto accident. Id.

MRI of Plaintiff's spine disclosed a protruding disc at L4-5 with overlying osteophyte formation and encroachment of the left lateral recess and foramen at that level. (Tr. 126). Tests ordered by Dr. Nickolson indicated that her kidneys were normal, that she had gall stones and a cystourethroscele causing stress incontinence. He recommended exercises and asked her to return in a year if hematuria persisted. (Tr. 145).

Plaintiff returned to Dr. Stiller on May 15 complaining of inability to sleep due to discomfort, hand numbness, and pain across her low back and hips. She also stated medication did not help, and that Oxycontin put her to sleep. (Tr. 151).

Plaintiff was seen by R.E. Pennington M.D., PhD., on June 4. Dr. Pennington specializes in the treatment of pain and the spine. Dr. Pennington documented muscle guarding at the L4 interspace, positive straight leg raising test on the right, and forward flexion to about 60 degrees. He stated that Plaintiff was able to walk on her heels and toes with relatively stable balance. He diagnosed lumbar radiculopathy, and indicated degenerative disc disease or a disrupted annulus should be ruled out. He recommended electrodiagnostic testing, scheduled Plaintiff for epidural steroid injections, started a stabilization protocol and placed her on medications for sleep (Trazodone) and pain (Vicodin). (140-141).

Plaintiff returned to Dr. Stiller on July 13. She told Dr. Stiller that Dr. Pennington had recommended injections and possibly surgery. Dr. Stiller recommended that she get a second opinion. Plaintiff indicated that Vioxx had helped. and that Oxycontin had lessened her pain. (Tr. 149).

Plaintiff's application for benefits was denied on November 5 following record review by an agency physician, who indicated that Plaintiff had the physical residual functional capacity ("RFC" herein) for light work. (Tr. 61, 153-155). Her application was again denied on reconsideration on November 20, 2001. (Tr. 62).

Plaintiff began seeing a nurse practitioner, Deborah Pollack, on February 3, 2002. Ms. Pollack was associated with Casa de Buena Salud, Inc., a clinic that had provided care to Plaintiff prior to her auto accident. (Tr. 172, 174). Plaintiff arrived at her appointment walking in a hunched over position, complaining of increasing mid- and lower-back pain. Physical examination indicated decreased range of motion, positive straight leg raise at 45E and tenderness to touch and palpation from L1 to S1. Ms. Pollack diagnosed low back pain, provided Plaintiff with Vioxx, and counseled

her on proper body mechanics, diet and exercise. Plaintiff told Ms. Pollack that she had seen Dr. Pennington, but that her attorney had advised her not to see him again. Ms. Pollack advised her that she needed a orthopedic assessment and referral, and scheduled her to return in three weeks.

When Plaintiff returned on February 26, she complained of continued back pain, and stated that Vioxx had not helped. (Tr. 171). The only physical finding noted on examination was tenderness to touch and palpation from the lumbar region to the sacrum. Ms. Pollack prescribed Elavil to be taken at night, dispensed additional Vioxx and referred Plaintiff to a Dr. Lattimer for an orthopedic consult. There is no indication that Plaintiff ever saw Dr. Lattimer.

The next record of medical care is a visit to Dr. Stiller on August 6, 2002. (Tr. 176). Dr. Stiller wrote:

> MVA has had chronic pain in coccyx and lower back across back at upper lumbar region - below belt-line.
> – has a constant ache in lower back.
> – Has been unable to sweep/vacuum + do lawn mowing, back too sore.
> – Has been going to Casa Buena Salud + has been using Vioxx with some relief.
> – discussed trying pool therapy + Vioxx + also look into epidurals for her back with Dr. Pennington.
> Dx: Chronic back pain with pain in coccyx.
> Rx: Book with Rehab Center for Pool Therapy + book with Dr. Pennington for epidurals.
> Vioxx samples 25 mg
> Rx 100 Oxy IR 5 mg 1 qid prn ;120 Darvon 65 i qid prn

(Tr. 176).

Plaintiff returned to Casa de Buena Salud two days later requesting a "disability letter." (Tr. 170). Ms. Pollack noted that Plaintiff "did not have ortho appt and has not followed up. Has not had Vioxx for 'a couple of months.' " Id. No physical examination was recorded. Plaintiff was instructed to use moist heat and Ben Gay ointment, and was provided with 90 Vioxx tablets. She was also told to ask her attorney what orthopedic doctor he wanted her to see, and that the clinic would been make

4

the referral to that doctor.

Plaintiff's administrative hearing was conducted on August 27, 2002.  (Tr. 26-60).  She testified that she lived with her disabled husband and three minor children, and that they lived on her husband's social security disability and food stamps.  She complained of shoulder pain, tingling, pain and numbness of her legs, left knee pain, headaches, an inability to sit or walk for more than 15 minutes at a time, difficulty sleeping, postural limitations (unable to rise from kneeling position, inability to squat, limited bending), problems with her right hand, and increased pain with sitting or standing.  She gave conflicting testimony regarding medication side effects, stating that she had none and that Darvocet made her groggy.  She stated that she had no social activities, watched TV, did a little housework such a folding towels, spent her days sitting and lying down because she was "drugged up," was able to bathe, groom, dress and eat without help, could walk one-half block, and could lift a pot of coffee or a gallon of milk. She confirmed that she hadn't returned to Dr. Pennington because her personal injury attorney had told her not to until her lawsuit was settled.

### III.     The ALJ's decision.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 12, 2000, her alleged date of onset of disability (step one); that the disc protrusion documented on MRI was a "severe" impairment (step two) which did not meet or equal a listed impairment (step three); that Plaintiff' testimony was not fully credible; that she retained the RFC for a full range of light work; that she had no past relevant work (step four); and that given her age, education, work experience and retained RFC, application of the Medical-Vocational Guidelines ("grids" herein) directed a finding of not disabled. (Tr. 15-19).

**IV.    Issues Raised on Appeal**

Plaintiff contends that

A.  The ALJ's credibility assessment is not supported by substantial evidence and/or that the ALJ did not apply correct legal principles in assessing credibility.  Included in the argument is Plaintiff's claim that it was error for the ALJ to consider Plaintiff's failure to seek medical treatment as evidence reflecting adversely on her credibility.

B.  The ALJ's RFC finding is not supported by substantial evidence.

C.  The ALJ's evaluation of Plaintiff's complaints of pain and dysfunction are not supported by substantial evidence and/or that the ALJ did not apply correct legal principles in assessing her pain and dysfunction.

D.  The ALJ failed to apply correct legal principles by failing to consult a vocational expert.

**IV.    Scope of Review**

I review the ALJ's decision only to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quotations omitted).  In making the substantial evidence determination, I neither reweigh the evidence nor substitute my judgment for that of the ALJ. *See Thompson*, 987 F.2d at 1487.  If the Commissioner's factual findings are supported by substantial evidence, they must be given conclusive effect.  42 U.S.C. §405(g).  Substantial evidence is that which a reasonable person might find sufficient to support a particular conclusion. *Richardson v. Perales*, 402 U.S. 389, 401-402 (1971).  Further, evidence must be more than a

scintilla, Id., at 403, but may be less than a preponderance. *Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir. 1991).

## V.   Discussion

The ALJ cited to the following in assessing both Plaintiff's credibility:

- Dr. Pennington, a rehabilitative specialist, recommended that Plaintiff receive epidural injections.

- Plaintiff indicated that her personal injury attorney told her not to see Dr. Pennington again.

- Plaintiff was referred to another orthopedist in February 2002, but did not make and appointment.

- Dr. Stiller gave Plaintiff samples of Vioxx, which "helped."

- Plaintiff indicated a reluctance to fill her prescriptions and disinterest in obtaining epidural injections.

- Plaintiff requested a disability letter from in August 2002. At that time she stated she had not taken Vioxx for a couple of months. The clinic did not provide this letter, and recommended that she see an orthopedist.

- Nothing in the records indicates that Plaintiff ever pursued treatment with an orthopedist.

- Plaintiff has gone for long periods without medication.

(Tr. 17-18).

The recitation of these factors complies with the requirements of *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). While not conclusive on the issue of credibility, these factors provide an adequate basis to question the Plaintiff's testimony as to the severity of her pain complaints.[1]

---

[1] The ALJ did not deny benefits on the basis of Plaintiff's failure to obtain epidural injections. As indicated, he considered how her failure or refusal to receive the injections and to follow up with recommended orthopedic evaluation as factors relevant to credibility. *See Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000).  Accordingly, the four considerations required by *Frey v. Bowen*, 816 F.2d 508,

Plaintiff contends she should not be accountable for following her attorney's advice not to return to Dr. Pennington until her personal injury claim was resolved. This is essentially a credibility evaluation which the ALJ considered and rejected.[2] I find no reason to overturn the ALJ's evaluation of this excuse. Plaintiff also cites to her poverty as a reason for not obtaining recommended treatment. Inability to pay may justify failure to pursue treatment. *See Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir.1993). The record indicates that Plaintiff has limited funds to pay doctors. Payment for her emergency room treatment in 2001 was submitted to an indigent fund (Tr. 123), her family of five lives on her husband's social security disability payments and food stamps (Tr. 31-32 ), in April 2001she advised Dr. Stiller that she could not afford to purchase all the medications prescribed for her (Tr.151). In her request for reconsideration filed November 10, 2001, she requested that she be sent to a doctor, stating that "insurance doesn't want to pay for my doctor bill and can't go to doctors any more."  (Tr. 108). On the other hand, the record indicates that Plaintiff has access to medical care through the indigent fund, she has been to numerous doctors, none of whom indicated treatment was denied for financial reasons, when Plaintiff explained to Dr. Stiller why she had not gotten the epidural injections, she did not refer to lack of funds, but indicated that "she prefers to avoid epidurals if possible." (Tr. 149). In view of this contradictory evidence, I will "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991). I

---

517 (10th Cir.1987) are not implicated (whether the treatment at issue would restore claimant's ability to work;  whether the treatment was prescribed; whether the treatment was refused; and, if so, whether the refusal was without justifiable excuse.).

[2]"I have difficulty reconciling why she has avoided seeing an orthopedist or complying with Dr. Pennington's medical recommendations in preference to the recommendations of her lawyer.  That she would choose to lead a pain ridden, impoverished lifestyle on his instruction rather than seek specialized medical treatment seems less than credible."  (Tr. 17).

find that the ALJ's rejection of Plaintiff's credibility was not contrary to law, was based on substantial evidence, and should be upheld.

The ALJ's finding regarding Plaintiff's lack of credibility does not compel a finding of not disabled. The ALJ must also determine Plaintiff's RFC for work activity of a regular and continuing basis despite her limitations. 20 C.F.R. §416.945. *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993).

The ALJ relied on the opinions of non-examining state agency physicians in concluding that Plaintiff retained the RFC for light work.[3] (Tr. 18-19). In order to affirm this decision, such opinions must constitute substantial evidence. *Cf.* 42 U.S.C. §405(g) ("The finding of the (Commissioner) as to any fact, if supported by substantial evidence, shall be conclusive.").

In order to constitute substantial evidence, the opinions of non-examining physicians must be supported by other evidence of record. SSR 96-6p, *West's Social Security Reporting Service*, 1996-1997 pocket supplement, at 116.[4] Opinions of non-examining physicians which do not take into account relevant medical reports do not constitute substantial evidence. *Cf. Jozefowicz v. Heckler*, 811 F.2d 1352, 1359 (10th Cir. 1987) (opinion of consulting, examining physician lacked credibility

---

[3] While the ALJ is not limited to considering only medical evidence, see 20 C.F.R.§ 416.945(a) ("[RFC] is an assessment based upon all of the relevant evidence."), the ALJ cited to no other evidence in his evaluation of Plaintiff's RFC.

[4] "(T)he opinions of physicians . . .who do not have a treatment relationship with the individual are weighted by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for opinions, than are required of treating sources.

"For this reason, the opinions of State agency medical . . . consultants . . .can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the state agency medical . . . consultant or other program physicians."

when based solely on physical examination, performed without additional medical studies or reference to the claimant's medical history.). Evaluation forms, checking off functional capacities or limitations, standing alone, and unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

I find that there is no competent medical evidence in the record to support the ALJ's light work determination. The RFC assessment form prepared by one non-examining agency physician and adopted by another (Tr. 61-62, 153-160), does not constitute substantial evidence because it was not accompanied by thorough written reports or persuasive testimony, *see Frey v. Bowen*, 816 F.2d at 515. To support his opinion, the State agency physician stated:

> Claimant with chronic lumbar pain s/p MVA 3/01. MRI showed L4-5 lateral recess stenosis. Claimant has restricted lumbar ROM. Also had right shoulder and back pain from neck down following accident, but this seems to have resolved. . . .

(Tr. 154).

This explanation can hardly be considered thorough or persuasive. It ignores the evidence of disc protrusion demonstrated on MRI, a finding accepted by the ALJ. (Tr. 126, 16). It ignores positive straight leg raising found by Dr. Pennington and Ms. Pollack. (Tr. 141, 172). It cites to no evidence from which one could infer Plaintiff's specific physical functional capabilities. None of the other doctors who have examined Plaintiff have specifically addressed or defined her exertional limitations in terms of her ability to sit, stand, walk, lift, carry, push, and pull or her nonexertional limitations in terms of her ability to reach, handle, stoop, crouch, climb, etc., see 20 C.F.R. §416.969a. As a result, the ALJ cannot simply conclude, as it appears he did in the decision under review, that Plaintiff is capable of performing light work. Instead, the ALJ must evaluate and make specific findings as to Plaintiff's physical RFC, *see Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996), and the

10

findings must be supported by substantial evidence, *see Haddock v. Apfel*, 196 F.3d 1084, 1088-89 (10th Cir.1999).

Further, the ALJ must ensure that a sufficient record exists to evaluate Plaintiff's exertional limitations. See SSR 96-8p, 1996 WL 374184, *5 (July 2, 1996) (noting that ALJs "must ... make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC," and that "[t]he RFC assessment must address both the remaining exertional and nonexertional capacities of the individual"). While the ALJ is not limited to considering only medical evidence, see 20 C.F.R. §416.945(a) ("[RFC] is an assessment based upon all of the relevant evidence."), his duty to develop the record may include obtaining additional medical evidence from Plaintiff's treating physicians or ordering a consultative examination if the record does not otherwise contain sufficient evidence upon which to base an RFC finding, see 20 C.F.R. § 416.912(d)- (f) (2001).

Because this matter must be remanded in order to properly assess Plaintiff's RFC, I do not address Plaintiff's claim that the ALJ should have obtained evidence from a vocational expert. On remand, no particular result is dictated. This record does not substantially support a finding of disabled any more than it supports a finding of not disabled.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand (Docket No.9) is granted, and this matter is hereby remanded to the Commissioner of Social Security for assessment of Plaintiff's residual functional capacity. The Commissioner shall develop the record by obtaining additional medical evidence from Plaintiff's treating physicians or shall order a consultative examination if the record does not otherwise contain sufficient evidence upon which to base an RFC finding.

                                           **Richard L. Puglisi**
                                  **United States Magistrate Judge**
                                      **(sitting by designation)**